UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

UNITED STATES OF AMERICA,

v.                                                                                          Case # 21-CR-6119-FPG

                                                                                            DECISION AND ORDER
ROBERT JACKSON,
                        Defendant.
───────────────────────────────────

## INTRODUCTION

On April 26, 2022, Defendant Robert Jackson was charged in a five-count superseding indictment (the "Indictment") with unlawfully possessing with the intent to distribute certain Schedule II controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). ECF No. 24. Defendant was specifically charged in Count One with possessing cocaine, in Count Two with possessing fentanyl, in Count Three with possessing fentanyl, methamphetamine and 4-anilino-N-phenethyl-4-piperidine ("ANPP"), in Count Four with possession of firearms in furtherance of drug trafficking crimes, and in Count Five with possession of a firearm and ammunition as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id*. By Order dated September 20, 2021, this case was referred to United States Magistrate Judge Marian W. Payson pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (b)(1)(B). ECF No. 6.

On January 14, 2022 and July 1, 2022, Defendant filed motions to dismiss the indictment and to suppress tangible evidence, statements, and identification testimony. ECF Nos. 17, 32, 37. On October 31, 2022, Magistrate Judge Payson issued a Report and Recommendation ("R&R"), recommending denial of Defendant's motions to dismiss and to suppress tangible evidence and recommending the motion to suppress statements be granted in part and denied in part. ECF No. 41. Specifically, with respect to the motion to suppress Defendant's statements, Magistrate Judge Payson recommended that three of six sets of statements he made during custodial police

1

questioning be suppressed and the remaining three be allowed at trial. *Id*. Magistrate Judge Payson further recommended denial of Defendant's motion to suppress identification as moot. *Id*.

On December 19, 2022, Defendant and the Government timely objected to the R&R. ECF Nos. 44, 45. Defendant objected to Magistrate Judge Payson's recommendation that the District Court deny the motion to dismiss the indictment on various grounds; deny the motion to suppress physical evidence; and deny the motion to suppress statements identified in the R&R. ECF No. 44. The Government objected to Magistrate Judge Payson's recommendation that the motion to suppress be granted in part. ECF No. 45. For the reasons explained below, the Court adopts Magistrate Judge Payson's R&R in full.

## LEGAL STANDARD

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009). After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). In addition, "[t]he Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings." *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013); *see also Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008).

## DISCUSSION

I. **Motion to Dismiss the Indictment on Various Grounds**

   a. **Multiplicity**

Defendant argues that Counts Two and Three of the Indictment are multiplicitous because each count charges "possession of fentanyl with intent to distribute." ECF No. 17 at 24-26. Defendant is charged in Count Two with possession of fentanyl with intent to distribute and in Count Three with possession of fentanyl, methamphetamine, and ANPP with intent to distribute. ECF No. 24. The Government contends that the charges are not multiplicitous because Count Two requires that some of the quantities contained fentanyl and Count Three requires that some of the quantities contained a mixture of fentanyl, methamphetamine, and ANPP. ECF No. 19. For the reasons below, the Court agrees with the Government.

As a general matter, "[a]n indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999). "[S]eparate counts may be charged under 21 U.S.C. § 841(a) for a single act of possession with intent to distribute multiple types of drugs." *United States v. Rodriguez*, No. 08-CR-888 (LTS), 2009 WL 274145, *1 (S.D.N.Y. 2009); *see United States v. DeJesus*, 806 F.2d 31, 36 (2d Cir. 1986) (upholding cumulative sentences for Section 841 convictions arising out of possession of heroin and cocaine); *see also United States v. Ansaldi*, 372 F.3d 118, 126 n.5 (2d Cir. 2004) (observing that "the general rule is that a defendant can be punished for two violations of 21 U.S.C. § 841 arising from one act of possession or distribution of multiple controlled substances").

Here, because it appears that law enforcement seized several quantities of controlled substances from Defendant's apartment, some of which contained a mixture of fentanyl and

3

methamphetamine and others of which contained a mixture of fentanyl, methamphetamine, and ANPP, the Court easily concludes the charges are not multiplicitous. *See United States v. Rodriguez*, 2009 WL 274145 at *1 (conviction of two counts of distributing pills containing a mixture of cocaine and heroin not multiplicitous because they involved two different drugs). The Court accordingly denies this aspect of Defendant's motion.

### b. Double Jeopardy

Defendant argues that the indictment should be dismissed because a state grand jury considered charges arising out of the same facts alleged in this case yet concluded that insufficient evidence existed to indict. ECF No. 17 at 57-59. For the reasons stated below and in Magistrate Judge Payson's R&R, this "double jeopardy" argument is without merit.

It is well settled that jeopardy does not attach "until the jury has been empaneled and sworn, and is thus competent to dispense a judgment of guilt." *United States v. White*, 980 F.2d 836, 842 (2d Cir. 1992); *see Crist v. Bretz*, 437 U.S. 28, 38 (1978) ("jeopardy attaches when the jury is empaneled and sworn"). Here, no trial jury was empaneled in connection with the state court prosecution and, thus, jeopardy did not attach. *See United States v. Brown*, 634 F. App'x 806, 809 (2d Cir. 2015) (summary order) ("[J]eopardy does not attach until the trial jury is empaneled and sworn." (internal quotation marks omitted)); *see also United States v. Nova*, 478 F. Supp. 3d 87, 93 (D. Mass. 2020) (denying dismissal of federal indictment after dismissal of state prosecution for same offense before trial jury empaneled, since "a jury was never empaneled and sworn, jeopardy never attached in [defendant's] state case and thus the instant federal prosecution does not constituted a successive prosecution under the Double Jeopardy Clause").

Even if jeopardy had attached, Defendant's argument still must fail because the federal government is free to bring federal charges regardless of whether a state may have prosecuted a

4

defendant under state law for the same conduct. *United States v. Burden*, 600 F.3d 204, 229 (2d Cir. 2010) ("Under the dual sovereignty principle, a defendant may be prosecuted for the same conduct by more than one sovereign without offending the Double Jeopardy Clause because breaking the laws of each constitutes separate offenses[;] . . . [s]tate and federal governments are separate sovereigns in this analysis." (citation omitted)); *United States v. McCaskill*, 378 F. Supp. 2d 114, 117-18 (E.D.N.Y. 2005) ("[D]efendant contends that because a New York State Grand Jury failed to initially indict him . . . , the court is now precluded from finding him guilty of these charges[;] . . . the New York State Grand Jury and the United States District Court are two different entities whose powers are derived from two different sovereigns[;] [t]he Double Jeopardy Clause, therefore, is not implicated."). This aspect of Defendant's motion is accordingly denied.

    **c. Collateral Estoppel**

To the extent Defendant argues that the charges are barred by collateral estoppel, such an argument is similarly without merit. Collateral estoppel may bar a federal prosecution subsequent to a state prosecution only in the "most unusual circumstances." *United States v. Davis*, 906 F.2d 829, 833 (2d Cir. 1990). To claim collateral estoppel, Defendant must show a "significant relationship" between the state and federal prosecutors such that the federal sovereign's interest may be said to have been represented during the state proceeding. *Id*. at 834. Because Defendant offers no evidence that tends to show any such relationship existed, Defendant's motion must be denied insofar as it seeks dismissal of the indictment on this basis.

In sum, the Court accepts Magistrate Judge Payson's recommendation and denies Defendant's motion to dismiss the indictment.

**II.     Motion to Suppress Physical Evidence**

Defendant argues that all physical evidence seized from his apartment pursuant to a warrantless search conducted after he violated parole should be suppressed because the parole officers lacked "an articulable reason to search his residence [and] they lacked any information to suggest that contraband would be found inside." ECF No. 41 at 17; *see also* ECF No. 32 at 5-9. The Government contends that no articulable reason, or reasonable suspicion, is required to search Defendant's residence because the Government need only show the search was "reasonably related to [the parole officers'] supervisory duties." ECF No. 41 at 17; *see also* ECF No. 35 at 13-16. Defendant nevertheless maintains that the search was "not reasonably related" to the parole officers' duties. ECF No. 44. For the reasons below, the Court agrees with the Government and concludes that the search was proper.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[W]hether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006) (internal quotation marks omitted). To determine whether an individual possessed a reasonable expectation of privacy in the premises searched, a court must consider whether the individual exhibited an actual expectation of privacy and whether that expectation is one that society is prepared to recognize as reasonable. *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan J., concurring).

Parolees "have severely diminished expectations of privacy." *United States v. Barner*, 666 F.3d 79, 84 (2d Cir. 2012). Under the "special needs" doctrine, the government has an

"overwhelming" interest in closely monitoring individuals on parole. *Samson v. California*, 547 U.S. 850, 853 (2006) ("[t]his Court has repeatedly acknowledged that a State has an overwhelming interest in supervising parolees because parolees are more likely to commit future criminal offenses[;] [s]imilarly, this Court has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment"). Accordingly, parole officers have a "duty to investigate whether a parolee is violating the conditions of his parole, … one of which, of course, is that the parolee commit no further crimes." *Barner*, 666 F.3d at 84; *see also United States v. Lambus*, 897 F.3d 368, 404 (2d Cir. 2018) ("One aspect of the parole officer's duty thus includes an obligation to detect and to prevent parole violations for the protection of the public from the commission of further crimes."). "Of necessity, [parole officers] must have investigative powers to gather information about the parolee's activities, environment, and social contacts so as to ensure that the conditions of parole are not being violated and to monitor the parolee's progress of reintegration into society." *United States v. Reyes*, 283 F.3d 446, 458 (2d Cir. 2002).

Searches that may be unreasonable as to ordinary citizens may be reasonable as to parolees. *See Barner* 666 F.3d 83-84 ("In the context of parole and probation, the Supreme Court has explained that . . . 'special needs beyond normal law enforcement . . . may justify departures from the usual warrant and probable-cause requirements'[;] [a]s a result, 'probationers may be subject to a degree of impingement upon privacy that would not be constitutional if applied to the public at large.'" (quoting *Griffin*, 483 U.S. at 873, and *United States v. Grimes*, 225 F.3d at 258)). A search of a parolee's residence is reasonable under the Fourth Amendment if it is "reasonably

related to the performance of the [parole] officers' duties[.]" *United States v. Braggs*, 5 F.4th 183, 188 (2d Cir. 2021).

Here, Defendant's supervising parole officer, Officer Richards, received information before the search that Defendant may have violated his parole conditions by traveling to New York City to purchase a necklace for his girlfriend and tampering with his GPS tracking device. ECF No. 48 at 8. When questioned, Defendant acknowledged that he violated the conditions of his parole, tampered with the device, and did not seek permission to make the trip because he believed his request would be denied. *Id*. Based on these violations, Richards, as Defendant's parole supervising officer, testified that he authorized a search of Defendant's residence to investigate the violations because "contraband might be located inside the residence" and the absence, or presence, of the necklace allegedly purchased, as well as other potential evidence of intrastate travel, would corroborate or undermine Defendant's explanation. ECF No. 41 at 22.

Under these circumstances, the Court concludes that search was "reasonably related" to Richards's duties as parole supervising officer to ensure parolees' compliance with parole conditions and ensure that Defendant committed "no further crimes." *Barner*, 666 F.3d at 84. The Court accordingly accepts Magistrate Judge Payson's conclusion that the search was permissible under the "special needs" exception to the Fourth Amendment. *Barner*, 666 F.3d at 85 (search reasonably related to parole officer's duties where it "was performed in direct response to information that [the officer] obtained and that she had a duty to investigate further"); *United States v. Nazario*, 374 F. App'x 63, 65 (2d Cir. 2010) (summary order) (search reasonably related to parole officers' duties because "[t]he parole officers who conducted the search did so after determining that [defendant] had likely committed two parole violations: he was not in his home

8

after his . . . curfew, and, when he did arrive home, he appeared to be under the influence of drugs"). For these reasons, this aspect of Defendant's motion to suppress is denied.

**III.    Motion to Suppress Statements**

With respect to Defendant's motion to suppress statements, at issue are six statements. Defendant moved to suppress all six statements, and Magistrate Judge Payson recommended that the motion be denied with respect to Statements One, Two, and Four, and granted with respect to Statements Three, Five, and Six. Defendant objects to the recommendation as to Statements One, Two, and Four, arguing that they were elicited by an improper custodial interrogation. The Government objects to the recommendation as to Statement Three only, arguing that it was not elicited by interrogation. For the reasons set forth below, the Court adopts Magistrate Judge Payson's recommendations in full and concludes that Statements One, Two, and Four shall be permitted at trial and Statements Three, Five, and Six shall be suppressed. In addition, because the Government does not object to the suppression of Statements Five and Six, the Court adopts the portions of Magistrate Judge Payson's R&R pertaining to those two sets of statements, finding no "clear error" in Magistrate Judge Payson's recommendation.

On December 24, 2020, after Defendant violated his parole, Defendant reported to the parole office for police questioning and was subsequently transported from the office to his apartment by Officer Richards. ECF No. 41 at 5-6. Richards intended to conduct the above-referenced search upon their arrival. *Id*. When Richards escorted Defendant from the parole office to Richards's vehicle, Defendant noticed his girlfriend in the parking lot and shouted to her several times that parole officers were going to the apartment. *Id*. at 7. This set of statements constitutes Statement One. *Id*. Richards instructed Defendant to stop and advised Defendant, while the two

were *en route* to the apartment, that the statements presented a security risk to the officers that would be conducting the search. *Id*.

When Defendant and Richards reached the apartment, a group of parole officers and Defendant's girlfriend were present. *Id*. Defendant was instructed to sit next to the entrance of the apartment and was handcuffed. *Id*. He was not free to leave. *Id*. The parole officers then began their search of the apartment. *Id*. Richards remained with Defendant for much of the search. *Id*. at 7-8. After Defendant began to disregard directions, Defendant was moved from the apartment entrance to Richards's patrol vehicle. *Id*. at 8. Richards remained with Defendant and conversed with him intermittently. *Id*. Richards testified that he did not recall any discussion of Defendant's trip to New York City during this time. *Id*.

During their conversation, a Rochester Police Department ("RPD") vehicle arrived at the apartment. *Id*. Defendant asked Richards why the police had arrived and Richards responded that contraband may have been discovered in the residence. *Id*. Defendant and Richards continued to converse and Defendant said to Richards, "you got me again, didn't you, Richards?" *Id*. This statement constitutes Statement Two. *Id*. Richards did not ask Defendant a question before Defendant made this statement. *Id*. After Defendant uttered Statement Two, Richards asked "what do you mean?" *Id*. Defendant replied that Richards had "got [him] again" and that whatever was found in the apartment was his and his girlfriend "had nothing to do with any of it." *Id*. This set of statements constitutes Statement Three. *Id*. Defendant was not advised of his *Miranda* rights throughout this interaction. *Id*. at 8-9.

Shortly thereafter, RPD Officer Pepin was dispatched to the apartment to transport Defendant to the Public Safety Building. *Id*. at 10. While Defendant was in Richards's vehicle, a different officer began to remove shackles from Defendant's ankles and Defendant asked what

was happening. *Id*. The officer responded that Defendant was to be transported to the Public Safety Building. *Id*. The officer and Defendant discussed Defendant's physical state, Defendant's comfort with the handcuffs, and Defendant's GPS tracker. *Id*. at 10-11.

After Defendant's shackles were removed by the officer, Defendant exited Richards's vehicle and approached Pepin, who had arrived, asking Pepin, "Before we leave, can I just tell my lady I love her, please? I'm not going to see her for awhile." *Id*. at 11. This constitutes Statement Four. *Id*. Pepin informed Defendant that his girlfriend was also to be transported to the Public Safety Building. *Id*. Defendant then told an unidentified individual to "stop crying," which constitutes Statement Five, and asked someone to "take pictures of his kids" and make sure they are "happy," which constitute Statement Six. *Id*.

As discussed, Defendant objects to Magistrate Judge Payson's recommendation that his motion to suppress Statements One, Two and Four be denied. *See* ECF No. 44. Defendant contends each statement was elicited by an unlawful custodial interrogation conducted without *Miranda* warnings. For the reasons set forth below, the Court disagrees and adopts Magistrate Judge Payson's recommendation.

As a general matter, statements made during a custodial interrogation are inadmissible unless a suspect has first been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). That is, law enforcement must give Miranda warnings when a subject is both "in custody" and under "interrogation" by law enforcement. *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Here, the parties do not dispute Defendant was in custody for each statement at issue; rather, the parties disagree about whether Defendant's statements were elicited via interrogation at the hands of law enforcement. Not every statement a suspect in custody makes to law enforcement, however, is necessarily the product of "interrogation." *Innis*, 466 U.S. at 299.

11

Spontaneous statements, given freely and voluntarily, are not subject to *Miranda* warnings because they are not deliberately elicited by law enforcement. *Id*. at 299-300. A defendant's statements are voluntary if they are "the product of an essentially free and unconstrained choice[.]" *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973). To determine whether a defendant's statements were voluntary, courts look to the totality of the circumstances surrounding the statements. *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991).

Interrogation includes "express questioning" and the "functional equivalent" of questioning; namely, "'words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Broughton*, 600 F. App'x 780, 783 (2d Cir. 2015) (summary order) (quoting *Innis*, 446 U.S. at 300-301). "Law enforcement officers are not to be held accountable for the unforeseeable results of their words or actions, nor does police conduct qualify as interrogation simply because it struck a responsive chord in a defendant." *United States v. Davis*, No. 10-CR-6153 (MWP), 2011 WL 2936123, *8 (W.D.N.Y. July 18, 2011) (internal quotation marks omitted). Whether the police should have known that their words or actions were reasonably likely to elicit an incriminating response is determined by examining "the totality of the circumstances." *Broughton*, 600 F. App'x at 783.

Here, the Court concludes that Statements One, Two, and Four were voluntary and not the product of interrogation. Each statement is addressed in turn.

Statement One—Defendant's parking lot statements to his girlfriend that parole officers would be visiting his apartment—was not elicited by any question, statement, or conduct from Richards. When Richards brought Defendant from the parole office to his patrol vehicle, Defendant appears to have simply started shouting to his girlfriend. Indeed, there is no evidence

Richards could have, nor should have, known that the sight of Defendant's girlfriend outside the building would elicit the statements Defendant seeks to be suppressed. All evidence suggests that Defendant exercised a "free and unconstrained" choice to make such statements to his girlfriend in Richards's presence, a conclusion amplified by Richards's instruction to Defendant to stop making such statements, and his later admonition that such statements risked the parole officers' safety. *Schneckloth*, 412 U.S. at 225-26.

Statement Two—Defendant's first statement to Richards that Richards "got him" again—similarly does not appear to have been elicited by any question or statement from Richards. While Defendant's statement was uttered in the context of a general conversation with Richards, the statement followed an exchange in which Defendant asked Richards a question about RPD's presence at his residence, not Richards. From the available evidence, Richards appears to have given an ordinary, factual response to Defendant's inquiry about RPD's arrival, which elicited Defendant's spontaneous, unprompted reaction. Under the totality of the circumstances, the Court concludes that Richards's response is not conduct that Richards should have known may elicit an incriminating response from Defendant. Moreover, a search-related discussion between law enforcement officers generally does not amount to interrogation. *See United States v. Jones*, No. 10-CR-168 (RJA), 2013 WL 4541042, *8 (W.D.N.Y. 2013) (finding defendant's statement to be spontaneous despite officer's discussion of discovery of firearm; "[t]his was an exchange between law enforcement officers that is to be expected during the execution of a search warrant and was neither evocative nor a psychological ploy designed to induce [the defendant] to make a statement of any kind"). Defendant's statement appears to have been a "spontaneous and voluntary" reaction to Richards's response to Defendant's own question. *United States v. Thomas*, 961 F. Supp. 43, 45-46 (W.D.N.Y. 1997) (defendant's second statement was unsolicited, spontaneous and

13

voluntary where initial statement was made in response to police question and subsequent statement was non-responsive to officer's question; "single inquiry about the genesis of the altercation was, under all the circumstances, not calculated to induce an admission as to [defendant's] intent"). In short, while Richards's response may have elicited an incriminating statement from Defendant, his conduct did not amount to interrogation for Fifth Amendment purposes at that time.

Statement Four—Defendant's request to Pepin that he be permitted to "tell my lady I love her, please?" because he was "not going to see her for awhile[,]" ECF No. 41 at 11—like Statement One, appears to have been the product of a "free and voluntary" choice, absent any prior questions, statements, or suggestive conduct from law enforcement. *Innis*, 466 U.S. at 299. Under the totality of the circumstances alleged, Defendant's statements appear to have been spontaneous, unprompted, and thus not entitled to *Miranda* protection.

For these reasons, the Court concurs with Magistrate Judge Payson's recommendation and denies Defendant's motion with respect to Statements One, Two, and Four.

The Government objects to Magistrate Judge Payson's recommendation that Statement Three be suppressed. ECF Nos. 45, 48. Magistrate Judge Payson concluded that the statement was elicited from an unlawful custodial interrogation, but the Government contends that the question that elicited Statement Three did not amount to an interrogation for *Miranda* purposes. For the reasons set forth below, the Court disagrees with the Government and adopts Magistrate Judge Payson's recommendation.

Statement Three—Defendant's remarks that Richards "got [him] again" and that whatever was found in the apartment was his and his girlfriend "had nothing to do with any of it[,]"—was, under the circumstances alleged and unlike the statements above, the product of "'words or actions

14

on the part of the police […] that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Broughton*, 600 F. App'x 780, 783 (2d Cir. 2015) (summary order) (quoting *Innis*, 446 U.S. at 300-301). As alleged, Statement Three was the product of Richards's follow up question—"what do you mean?"—to Statement Two, a question which Magistrate Judge Payson correctly concluded was "reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 300-301. The Government maintains that Richards's follow up question was not one that he should have known was "reasonably likely to elicit an incriminating response" and was a permissible "clarifying question" under the Fifth Amendment. *United States v. Rommy*, 506 F.3d 108, 133 (2d Cir. 2007) (where a person in custody volunteers incriminating information to the police, clarifying questions may not necessarily constitute interrogation). While this question undoubtedly presents a close call, the Court is not persuaded by the Government's position and concludes that Richards's follow up question was not permissible under the Fifth Amendment.

As a general rule, "[l]aw enforcement officials [may] ask reasonable follow-up questions to volunteered statements without first giving [a] suspect *Miranda* rights," *United States v. De Santis*, No. 00-CR-829 (AGS), 2000 WL 1863538, at *4 (S.D.N.Y. Dec. 20, 2000). Such questions, however, must be "neutral efforts to clarify what has been said" and may not seek to "expand the scope" of statements already volunteered. *Id.* (emphasis added); *United States v. Powell*, No. No. 21-CR-572 (EK), 2022 WL 6772323, at *6 (E.D.N.Y. Oct. 11, 2022). The Second Circuit has held that a "[c]areful inquiry into the underlying facts and circumstances may thus be necessary to determine whether […] the follow-up questions were seeking only to clarify information already volunteered." *Rommy*, 506 F.3d at 133.

Accordingly, the Court must conduct a "careful inquiry" into the "underlying facts and circumstances" of this case to determine whether Richards simply asked a "neutral," "clarifying question" about Defendant's previously volunteered statement. *Rommy*, 506 F.3d at 133; *United States v. De Santis*, No. 00-CR-829 (AGS), 2000 WL 1863538, at *4 (S.D.N.Y. Dec. 20, 2000). Under the circumstances alleged, the Court is not convinced.

Here, Richards testified that he had "had a long working history with [Defendant]" and "the one thing that [Defendant] always had been was honest." ECF No. 28 at 55.[1] Richards testified that, based on this experience, he believed that "if [Defendant] felt like he did wrong, he would tell you." *Id* at 55. "In the past [,]" Richards testified, "when things weren't going well for [Defendant], he was honest then, too" and that was "part of who [Defendant] was." *Id*. Richards added that after he had asked his follow up question to Statement Two, he "wasn't surprised to hear" Defendant make Statement Three. *Id*. Richards testified that the information Defendant provided was "very important" and "something that you don't forget." *Id*.

In addition, Richards testified that, at the time he had asked Defendant what he meant, Richards "was already aware of what was located [in the apartment] at that time." *Id.* at 57. Richards testified that he had observed, after entering the apartment and before bringing Defendant to his patrol vehicle, "two handguns, one being a revolver, some quantity of what appeared to be illegal narcotics and a sizeable […] bind of money." *Id.* at 57.

Under these circumstances, the Court is not persuaded by the Government's contention that Richards's follow up question was a neutral attempt to clarify what Defendant had already said. *See Rommy*, 506 F.3d at 133. In light of Richards's experience, history with Defendant, and observations at the apartment before the statements were made, the Court concludes that Richards

---

[1] According to his testimony, Richards became a parole officer in 2016 and had supervised Defendant since 2018. *Id.* at 9, 11.

16

likely knew, or should have known, that his question was "reasonably likely" to elicit an incriminating response from Defendant and not simply "clarify" what he had said. *Innis*, 446 U.S. at 300-301; *Rommy*, 506 F.3d at 133. The available evidence suggests Richards likely knew what Defendant had meant by Statement Two and sought more information, not simply for Defendant's statement to be "clarified." *Rommy*, 506 F.3d at 133. In addition, due to the incriminating nature of that statement, Richards should have known that his question was "reasonably likely" to elicit another incriminating response if he continued to engage Defendant. *Innis*, 446 U.S. at 300-301. Moreover, Defendant's response appears to have "expand[ed] the scope" of Defendant's previous statement significantly, as evidenced by the additional information Defendant provided regarding his girlfriend's involvement, or lack thereof, in what the police had discovered at the apartment, an expansion Richards may have sought considering his prior knowledge of what had been located, as well as his relationship with Defendant and Defendant's alleged reputation for honesty. ECF No. 28 at 55; *Powell*, 2022 WL 6772323, at *6. Indeed, Richards stated that Defendant's response to his question was a "very important piece." ECF No. 28 at 55. Accordingly, the Court concludes that, under these facts and circumstances, Statement Three should be suppressed.

For these reasons, the Court adopts Magistrate Judge Payson's recommendation with respect to Statement Three and grants this aspect of Defendant's motion to suppress.

## CONCLUSION

The Court has reviewed the remaining, unopposed portions of the R&R and finds that they are free of clear error. For the foregoing reasons, the Court rejects the parties' objections and ADOPTS Magistrate Judge Payson's R&R, ECF No. 41, in full.

IT IS SO ORDERED.

Dated: February 2, 2023
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Court Judge
Western District of New York